UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 19-_____ |
| | § | |
| MONTEREY RESOURCES, *et al.* | § | Chapter 11 |
| | § | Joint Administration |
| DEBTORS.[1] | § | |

## MOTION TO COMPEL TURNOVER OF ESTATE PROPERTY

NOW INTO COURT, through undersigned counsel, comes Monterey Resources LLC and Green Wheel, LLC (collectively the "Debtors") who file this *Motion to Compel Turnover of Estate Property* (this "Motion") and in support thereof do state as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over the Debtors, their estates, and this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 105(a), 541, and 543 of the Bankruptcy Code.

### BACKGROUND

3. On the date hereof (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under the Bankruptcy Code.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Monterey Resources LLC (-7303) (Case No. 19-xxxx); Green Wheel, LLC (-8860) (Case No. 19-xxxx). Contemporaneously with the filing of these chapter 11 cases, the Debtors filed *an Emergency Motion for Order under Bankruptcy Rule 1015(b) Directing the Joint Administration of Chapter 11 Cases*. The Debtors' service address is 660 Camino Aquajito, Suite 300, Monterey, CA 93940.

4. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the date hereof, no trustee, examiner, or official committee of unsecured creditors has been appointed in the Debtors' chapter 11 cases. No date has been set for a meeting pursuant to section 341 of the Bankruptcy Code.

5. The Debtors own and operate producing and non-producing mineral interests, including oil and gas wells, in Louisiana ("Mineral Interests"). On May 15, 2018, the Debtors (as borrowers) entered into an Amended and Restated Credit Agreement (the "Credit Agreement") with 405 Arapahoe, LLC (as administrative agent for the lenders)("Arapahoe"), under which the lenders agreed to advance a principal amount of $15,000,000.00 to the Debtors. Credit Agmt. § 2.01. The $15,000,000.00 principal loan amount was evidenced by three promissory notes. As security under the Credit Agreement, the Debtors executed two mortgages ("Mortgages") in favor of Arapahoe covering the Mineral Interests. Credit Agmt. § 4.19(b). Debtors also granted Arapahoe a security interest in certain movable property (including equipment, machinery, and supplies) related to the mortgaged property. Credit Agmt. § 4.19(a).

6. Under the terms of the Credit Agreement, the Debtors were obligated to remit all gross proceeds from the Mineral Interests' production, including third-parties' royalty and working interest revenues, to a deposit account controlled by Arapahoe (the "Lockbox Account") and to direct "all account debtors and royalty payors" to remit all payments due to Debtors to the Lockbox Account. The funds in the Lockbox Account were to be used to pay vendors for services necessary to Debtors' Louisiana operations, as well as royalties to Louisiana landowners and maintenance payments to Louisiana lessors. Imel Aff. ¶¶ 13-18. Indeed, the Credit Agreement itself mandated Debtors to make such payments:

- <u>Section 5.05(a):</u> Debtors are required to "operate [the Mineral Interests] . . . in a careful and efficient manner in accordance with the customary practices of the industry and in compliance with all applicable contacts and agreements and in compliance with all applicable Governmental Requirements. . . ."
- <u>Section 5.05(c):</u> Debtors are required to "promptly pay and discharge, or use commercially reasonable efforts to cause to be paid and discharged, all material delay rentals, royalties, expenses and indebtedness accruing under the leases or other agreements affecting or pertaining to [the Mineral Interests]. . . ."
- <u>Section 5.05(d):</u> Debtors are required to "promptly perform or use commercially reasonable efforts to cause to be performed, in accordance with industry standards, the material obligations required by each and all of the assignments, deeds, leases, sub-leases, contracts and agreements affecting its interests in [the Mineral Interests]. . . ."

*See also* Imel Aff. ¶ 13.

7. Instead, beginning September 27, 2018, Arapahoe took total control of all Lockbox Account funds, refused to pay critical vendors for operations related to the Mineral Interests, refused to pay royalty and working interest owners, and refused to pay lease maintenance payments. Imel Aff. ¶¶ 15-18. Essentially, Arapahoe took control of Debtors' purse strings and thereby controlled Debtors' operational decision-making. Imel Aff. ¶ 17. Debtors made repeated requests and took efforts to ensure they would be able to continue to meet their Section 5 obligations under the Credit Agreement and their obligations as operator under Louisiana law. Imel Aff. ¶ 18. Despite these efforts, Arapahoe interfered with and thwarted Debtors at every turn, effectively destroying any possibility for Debtors to operate the Louisiana Mineral Interests prudently. *Id.* Such interference occurred not only through the refusal to release third-party funds held in the Lockbox Account, specifically royalty and other working interest owner funds, but also by Plaintiff's refusal to allow Lockbox Account funds to be used to pay operating expenses associated with the Mineral Interests. *Id.*

8. After bleeding the Lockbox Account for six months, Arapahoe filed a Petition for Executory Process and for Ex Parte Appointment of Keeper on March 8, 2019 in the Second

Judicial District Court for the Parish of Claiborne, State of Louisiana ("Petition"). The Claiborne Parish court issued an Order for writ of seizure and sale ("Writ") the same day. The Order also appoints Arapahoe or its Designee as Keeper. The Sheriff's sale of Defendants' property was scheduled for July 24, 2019.

## LAW AND ARGUMENT

9. The Debtors request that the Court direct Arapahoe to immediately turnover all the Debtors' property, including the Lockbox Account, to the Debtors and file an accounting of such property. Additionally, the Debtors are requesting that any ordering approving this Motion be a final order and immediately effective and enforceable upon entry.

10. Upon the entry of an order for relief, all the property of the Debtors (with limited exceptions) becomes property of the bankruptcy estate. 11 U.S.C. § 541(a).

11. Section 362 of the Bankruptcy Code acts to stay:

> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

11 U.S.C. § 362(a).

12. Section 543(b) of the Bankruptcy Code provides, in part, that the Receiver **shall** "deliver to the trustee [or the Debtor] any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case…" and "file an accounting" of such property. 11 U.S.C. § 543(b).

13. Arapahoe, pursuant to the Petition and Writ, constitutes a custodian as defined by section 101(11), to which section 543 applies. 11 U.S.C. § 101(11); *Union Fed. Credit Union v. Thornton,* 162 So. 3d 414, 417 (La. App. 2d Cir 01/28/15)(acknowledging that a keeper under Louisiana law is subject to Section 543).

14. Section 543(b) imposes a straightforward turnover obligation on Arapahoe: Arapahoe must "deliver" to the estate "any property of the debtor . . . that is in such custodian's possession, custody or control on the date that the custodian acquires knowledge of the commencement of the case." *Foust v. McNeill (in Re Foust)*, 310 F.3d 849, 854 (5th Cir. 2002) citing 11 U.S.C. § 543(b)(1)). Courts examining the role of a custodian once a bankruptcy case commences have consistently reached the same conclusion: once a state law liquidator, receiver, keeper, or custodian has knowledge of a bankruptcy petition, the role of a state law custodian is superseded by the trustee or debtor in possession. *In re Bodenheimer, Jones, Szwak & Winchell L.L.P.*, 592 F.3d 664, 670 (5th Cir. 2009); *In re R & G Props.*, 2009 Bankr. LEXIS 1318, at *8 (Bankr. D. Vt. Apr. 30, 2009). In other words, absent an order of the bankruptcy court "[t]he receivership is effectively over and done with; it has come to an end. " *In re Rimsat, Ltd.*, 193 B.R. 499, 502 (Bankr. N.D. Ind. 1996). *See also In re 245 Assoc., LLC*, 188 B.R. 743, 748 (Bankr. S.D.N.Y. 1995) ("[T]he commencement of the case 'supersedes' the custodianship."); *In re Northgate Terrace Apartments, Ltd.*, 117 B.R. 328, 331 (Bankr. S.D. Ohio 1990) ("Generally, a state court receivership is terminated upon a bankruptcy filing by the owner of the property."); *In re Jefferson Cty, Ala.*, 474 B.R. 228, 235-36 (N.D. Ala. 2012) (upon bankruptcy filing, state court appointed receiver lost possession and control over debtor's property and the debtor's property transferred to the bankruptcy court's jurisdiction).

15. Compliance with section 543 is not optional- property of the bankruptcy estate held by a custodian must be turned over to the estate, such that, "the default position under the Bankruptcy Code is that a debtor is entitled to custody of its property, and 11 U.S.C. § 543 directs custodians of estate property to turnover such property to the Trustee." *DeFlora Lake Dev. Assocs. v. Hyde Park (In re DeFlora Lake Dev. Assocs.)*, 571 B.R. 587, 598 (Bankr. S.D.N.Y. 2017) citing *In re Bullitt Utilities, Inc.*, 558 B.R. 173, 178 (Bankr. W.D. Ky. 2016) (footnote omitted)).

16. The Lockbox Account (along with any other property held by Arapahoe) is clearly property of the Debtors' bankruptcy estate and, pursuant to the plain language of section 543(b), must be turned over to the Debtors. The Writ effectuated a transfer of the Lockbox Account, such that the Lockbox Account is property of a debtor in the possession, custody, and control of Arapahoe and, therefore, must be returned to the Debtors unless this Court exercises discretion to excuse compliance with Section 543.

17. Further, Arapahoe's prepetition conduct unequivocally demonstrates that it cannot maintain its role as Keeper over the Lockbox Account. Arapahoe's control of the Debtors' accounts, and thereby controlling its operational actions, has resulted in it failing to pay critical vendors for operations related to the Mineral Interests, refusing to pay royalty and working interest owners, and refused to pay lease maintenance payments.

17. The Debtors also seek an accounting of the Lockbox Account as required by section 543(b)(2). Such accounting will evidence Arapahoe's failure to comply with the Credit Agreement, failure to pay critical vendors, failure to pay royalty and working interest owners, and refusal to pay lease maintenance payments.

18. Accordingly, as the Lockbox Account is property of the estate and Arapahoe is merely the custodian of the Lockbox Account under the Bankruptcy Code, the Court should direct

Arapahoe to immediately turnover all the Debtors' property, including the Lockbox Account, and file an accounting of such property. Although it may be premature to determine the likelihood of a successful reorganization,

19. Additionally, the Debtors request that any ordering approving this Motion be a final order and immediately effective and enforceable upon entry.

**Dated:** May 14, 2019

Respectfully submitted,

*/s/ Mark A. Mintz*
MARK A. MINTZ (#31878)
Jones Walker LLP
201 St. Charles Avenue, 51st Floor
New Orleans, Louisiana 70170
Telephone: (504) 582-8000
Facsimile: (504) 589-8260
Email: mmintz@joneswalker.com

Pending Pro Hac Vice

Kristina M. Johnson, MSB #9382
Jones Walker LLP
190 East Capitol Street, Suite 800 (39201)
Post Office Box 427
Jackson, Mississippi 39205-0427
Telephone: (601) 949-4785
Facsimile: (601) 949-4804
Email kjohnson@joneswalker.com

Joseph E. Bain, TX Bar No. 24085187
Jones Walker LLP
811 Main Street, Suite 2900
Houston, Texas 77002
Telephone: (713) 437-1800
Facsimile: (713) 437-1810
Email: jbain@joneswalker.com

***PROPOSED ATTORNEYS FOR THE DEBTORS***