UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 19-_____ |
| | § | |
| MONTEREY RESOURCES, *et al.* | § | Chapter 11 |
| | § | Joint Administration |
| DEBTORS.[1] | § | |

## DECLARATION OF ROBERT A. IMEL

1. My name is Robert A. Imel. I am a resident of Monterey County, California, have attained the age of majority, and am otherwise competent to make and give this declaration. I make and give this declaration based upon my personal knowledge and the business records of Monterey Resources, LLC (**"Monterey"**) and Green Wheel, LLC (**"Green Wheel"** and collectively with Monterey, the "**Debtors**") in the above-captioned chapter 11 cases ("**Chapter 11 Cases**").

2. I am a Member and President of Monterey, a Texas limited liability company with its headquarters recently moved to Monterey, California.[2] Green is a Delaware limited liability company. Green Wheel's sole member is Monterey.

3. On May 14, 2019 (the "**Petition Date**"), the Debtors filed petitions with the United States Bankruptcy Court for the Western District of Louisiana, Lafayette Division (this "**Court**") under chapter 11 of the United States Code (the "**Bankruptcy Code**"). As of the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Monterey Resources, LLC (-7303) (Case No. 19-xxxx); Green Wheel, LLC (-8860) (Case No. 19-xxxx). Contemporaneously with the filing of these chapter 11 cases, the Debtors are filing a Motion for Order under Bankruptcy Rule 1015(b) Directing the Joint Administration of Chapter 11 Cases. The Debtors' service address is 660 Camino Aquajito, Suite 300, Monterey, California 93940.

[2] The Debtors' offices recently moved from Dallas, Texas to Monterey, California.

Petition Date, the Debtors shall operate their business and manage their property as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases, and no committees have been appointed or designated.

4. Except as otherwise indicated, all facts set forth herein are based upon my personal knowledge of the Debtors' operations and finances, information learned from my review of relevant documents and information supplied to me by other members of the Debtors' management and the Debtors' advisors. I am authorized to submit this declaration (this "**Declaration**") on behalf of the Debtors, and, if called upon to testify, I could and would testify competently to the facts set forth herein.

## PART I
## PRELIMINARY STATEMENT

5. To enable the Debtors to minimize the adverse effects of the commencement of these Chapter 11 Cases on their business, and to avoid immediate and irreparable harm, the Debtors have requested various types of relief in their "first day" motions and applications (collectively, the **"First Day Motions"** and each a "**First Day Motion**"). The First Day Motions seek relief intended to allow the Debtors to effectively transition into chapter 11 and minimize disruption of the Debtors' business operations, thereby preserving and maximizing the value of the Debtors' estates.

6. I am familiar with the contents of each First Day Motion (including the exhibits thereto), and I believe that the relief sought in each First Day Motion: (a) is necessary to enable the Debtors to operate in chapter 11 with minimal disruption or loss of business; (b) constitutes a critical element to achieving a successful result in the Chapter 11 Cases and preserving the value of the Debtors' assets; and (c) best serves the interests of the Debtors' estates and creditors.

7. Part II of this Declaration describes the Debtors' business, the structure of the Debtors' operations, and the circumstances surrounding the commencement of these Chapter 11 Cases.

8. Part III sets forth the relevant facts in support of each of the First Day Motions.

## PART II

## OVERVIEW OF THE DEBTORS' BUSINESS OPERATIONS

9. The Debtors are a small independent oil and gas company with mineral interests in Louisiana.

10. The Debtors own certain producing and non-producing mineral interests, and associated assets, in the Parishes of Claiborne, Webster, and Caddo Parishes, State of Louisiana (collectively and hereafter **"Mineral Interests"**). The Debtors are party to and/or successor in interest to multiple mineral leases in connection with the Mineral Interests and, as such, owe express and implied obligations concerning the continued maintenance of these leases, including the duties of a prudent operator and payment of royalties under applicable law. Monterey is also the Operator of Record with the Louisiana Commissioner of Conservation of the Mineral Interests and, as such, owes duties to the State and other unit interest owners regarding the operation of the Mineral Interests.

11. On May 15, 2018, Monterey and Green Wheel (as borrowers) entered into an amended and restated credit agreement (the **"Credit Agreement"**) with 405 Arapahoe LLC (hereafter **"Arapahoe"**), as administrative agent for the lenders (as identified therein, the **"Prepetition Lenders"**), under which the lenders agreed to advance a principal amount of $15,000,000.00 to Monterey and Green Wheel. The $15,000,000.00 principal loan amount was evidenced by three promissory notes (the **"Notes"**). As security under the Credit Agreement, the Debtors executed two mortgages in favor of Arapahoe covering the Mineral Interests.

12. As of the Petition Date, the principal amount ($15,000,000) remains outstanding. It is my understanding that Arapahoe has asserted in prior court filings that the Debtors are obligated to pay contractual interest on the unpaid principal balance at a default rate of 18.0% per annum from and after March 1, 2019, until paid (a per diem of $7,500.00), plus certain amounts allegedly due thereunder.[3] If these assertions are demonstrated to be correct, the Prepetition Lenders would be owed approximately $15,555,000 in principal and interest as of the Petition Date.[4]

13. Under the Credit Agreement, the Debtors are obligated to "operate [the Mineral Interests] . . . in a careful and efficient manner in accordance with the customary practices of the industry and in compliance with all applicable contacts and agreements and in compliance with all applicable Governmental Requirements. . . ." Credit Agreement at § 5.05(a). The Credit Agreement further requires Monterey to "promptly pay and discharge, or use commercially reasonable efforts to cause to be paid and discharged, all material delay rentals, royalties, expenses and indebtedness accruing under the leases or other agreements affecting or pertaining to [the Mineral Interests]. . . ." Credit Agreement at § 5.05(c). The Credit Agreement also requires Monterey to "promptly perform or use commercially reasonable efforts to cause to be performed, in accordance with industry standards, the material obligations required by each and all of the assignments, deeds, leases, sub-leases, contracts and agreements affecting its interests in [the Mineral Interests]. . . ." Credit Agreement at § 5.05(d).

---

[3] It is further my understanding that the Debtors reserve all rights relating to this statement by the Arapahoe.

[4] Calculated based on the purported per diem interest rate of $7,500 over a course of 74 days (from March 1, 2019 until May 14, 2019).

14. Under the Credit Agreement, Monterey was obligated to "(a) remit all payments received by it to the Lockbox Account [as previously defined] and (b) direct all account debtors and royalty payors to remit all payments due to [Monterey] to the Lockbox Account." Credit Agreement at § 5.12. Thus, pursuant to this provision, all revenue received by Monterey from the Wells was deposited into an account controlled by Arapahoe (the **"Lockbox Account"**). The money deposited into the Lockbox Account was the gross proceeds from Monterey's oil and gas operations, and included royalties and other working interest revenues.

15. From September 27, 2018 forward, Arapahoe took total control of the Lockbox Account. Arapahoe controlled the payment, or lack thereof, of royalties to Louisiana landowners. Arapahoe controlled the payment, or lack thereof, to lessors in Louisiana for lease maintenance necessary to conduct Monterey's operations in Louisiana.

16. The gross proceeds in the Lockbox Account also included funds that paid for the ongoing operation of the oil and gas wells in Louisiana. Arapahoe refused to provide funds from the Lockbox Account to the Debtors so that they could pay Vendors providing services for the day to day operations associated with the Mineral Interests.

17. Through its control of the Lockbox, Arapahoe controlled the purse strings and thus all decisions regarding well maintenance, work-over operations, recompletion, sidetracking, lease maintenance, royalty payment, etc. for the Mineral Interests.

18. Despite repeated requests and other efforts by Monterey to fulfill its obligations under the Credit Agreement, Arapahoe interfered with and thwarted Monterey's efforts to operate the Louisiana Mineral Interests prudently. Interference occurred not only through the failure to release third-party funds held in the Lockbox Account, specifically royalty and other

5

working interest owner funds, but also by Arapahoe's failure to allow Lockbox Funds to be used to pay operating expenses associated with the Mineral Interests.

19. On March 8, 2019, Arapahoe filed a Petition for Executory Process in the Second Judicial District Court for the Parish of Claiborne, State of Louisiana. Arapahoe — without notice or service — obtained a Writ of Seizure and Sale (**"Writ of Seizure"**) directing the Sheriffs of Claiborne Parish, Webster Parish, Caddo Parish, and Union Parish to seize the Mineral Interests and movable property located in their respective parishes, as well as moveable property located in the States of Texas and Oklahoma.

20. The Sheriffs in all of the aforementioned Parishes have acted on the Claiborne Parish Writ of Seizure. The Sheriff's Sale of Monterey's and Green Wheel's property is scheduled for July 24, 2019. Monterey and Green Wheel were served with a notice of seizure on March 25, 2019.

21. Monterey thus has been prevented from performing its required duties under the Credit Agreement, leases, unit orders, etc., as operator of the Mineral Interests. Despite the foregoing actions, Arapahoe has not enrolled as Operator of Record for the Mineral Interests with the Louisiana Commissioner of Conservation.

22. A Keeper has been appointed pursuant to the Claiborne Parish Writ of Seizure, but the Keeper is merely performing services for a fee under contract and has not agreed nor undertaken the duties, responsibilities and obligations of an Operator of Record. Thus the duties of an operator under the Credit Agreement, leases, unit orders, etc. remain unperformed due to the action and/or inaction of Arapahoe.

# PART III

# FIRST DAY MOTIONS

23. Contemporaneously with the filing of the voluntary petitions to commence these Chapter 11 Cases, the Debtors have filed a number of First Day Motions. The Debtors anticipate the Court will conduct a hearing within a business day or two after commencement of the Chapter 11 Cases (the "**First Day Hearing**"), during which the Court will entertain the arguments of counsel with respect to the relief sought in each of the First Day Motions.

24. Generally, the First Day Motions have been designed to meet the immediate goals of: (a) establishing procedures for the efficient administration of these Chapter 11 Cases; and (b) continuing the Debtors' operations during these Chapter 11 Cases with as little disruption as possible. I have reviewed the First Day Motions, including the exhibits attached thereto, and believe that the relief sought in each of the First Day Motions is narrowly tailored to meet the goals described above and, ultimately, will be critical to the Debtor's ability to achieve success through these Chapter 11 Cases.

25. The following is a discussion of the First Day Motions that the Debtors will ask the Court to consider at the First Day Hearing.

**A.** *Motion for Interim and Final Orders Authorizing Use of Cash Collateral and Providing Adequate Protection* **(the "Cash Collateral Motion")**

26. Contemporaneously herewith, the Debtors will file the Cash Collateral Motion seeking an order (i) authorizing the interim use of Cash Collateral and (ii) setting a final hearing thereon, in order to maximize the value of the estates and to prevent irreparable harm to the Debtors prior to the Final Hearing.

27. Attached to the Cash Collateral Motion is a true and correct copy of a Report as of December 31, 2018 on Reserves and Revenue of Certain Properties with Interests Attributable to Monterey Resources LLC (the **"Reserve Report"**) performed by DeGolyer and MacNaughton.

28. As explained in the Cash Collateral Motion, the Reserve Report shows that the Mineral Interests are worth $21,473,000 which provides an equity cushion of $5,918,000 or more than 38% of the amount of Prepetition Indebtedness.[5] I believe that this equity cushion provides Arapahoe with sufficient adequate protection as required by the Bankruptcy Code.

**B.**   ***Motion to Compel Turnover of Estate Property* (the "Turnover Motion")**

29. Contemporaneously herewith, the Debtors will file the Turnover Motion seeking an order from this Court requiring Arapahoe to turnover all assets of the estate, including the Lockbox Account. The Debtors also are asking for an accounting of the Lockbox Account as required by section 543(b)(2).

**C.**   ***Motion for an Order Limiting Notice & Establishing Notice Procedures* (the "Motion to Limit Notice")**

30. Contemporaneously herewith, the Debtors will file their Motion to Limit Notice. The Debtors seek entry of an order limiting notice to certain creditors and parties-in-interest as well as to establish certain notice procedures. The Debtors also respectfully request approval of the "**Special Service List**," as defined in the Motion to Limit Notice, and approval to update and amend the Special Service List from time to time and to add parties requesting notice without further motion or order form this Court. The Special Service List is requested in this Motion to provide necessary creditors and other interested parties with adequate opportunity to object as required by the Bankruptcy Code and Bankruptcy Rules. Specifically, the Motion to Limit Notice provides notice will be given to (a) the Office of the United States Trustee for the

---

[5] *See* paragraphs 11 and 12 above.

Western District of Louisiana; (b) the Debtors and their counsel (including each of the Debtors' interest holders); (c) Arapahoe and its counsel; (d) all other secured creditors of the Debtor; (e) the Debtors' largest twenty (20) unsecured creditors; and (f) any governmental agencies having a regulatory or statutory interest in these Chapter 11 Cases.

31. Furthermore, I understand that the relief sought through the Motion to Limit Notice does not contravene the Bankruptcy Rules in that the Special Service List will not apply to: (a) notice of the first meeting of creditors pursuant to Bankruptcy Code section 341; (b) notice of the time fixed for filing proofs of claim; (c) notice of the hearing to consider approval of the disclosure statement and confirmation of a plan; (d) notice of the times fixed for filing objections to the disclosure statement and plan; (e) notice of the times fixed to submit ballots for accepting or rejecting the plan; (f) notice of any hearing on dismissal or conversion of this Chapter 11 Case; and (g) notice of any proposed Sale Transaction involving all or substantially all of the Debtor's assets.[6]

## CONCLUSION

32. For the reasons described herein and the First Day Motions, I believe that the prospect for achieving these objectives for the benefit of these estates and the Debtors' creditors, as well as any other parties-in-interest, will be substantially enhanced if the Court grants the relief requested in each of the First Day Motions and respectfully request the Court to do so.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

---

[6] *See also* Section 6 of the local Administrative Procedures for the United States Bankruptcy Court for the Western District of Louisiana.

## DECLARATION

I declare, pursuant to 26 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct to the best of my information, knowledge, and belief.

Dated: May 14, 2019.

/s/ *Robert A. Imel*
Robert A. Imel